IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JEFFREY FLEMING, | ) | Case No. 3:20-cv-234 |
| | ) | |
| Plaintiff, | ) | |
| | ) | JUDGE KIM R. GIBSON |
| v. | ) | |
| | ) | |
| KILOLO KIJAKAZI, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

This is a civil action seeking judicial review of an administrative decision. Jurisdiction is predicated upon 42 U.S.C. § 405(g). Plaintiff Jeffrey Fleming ("Fleming") appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying his application for Social Security Disability Insurance Benefits ("DIB"). (ECF No. 29). For the reasons set forth below, the Court **AFFIRMS** the Commissioner's decision.

I.  **Procedural History**

On June 19, 2018, Fleming protectively filed a Title II application for a period of disability and DIB. (Tr. 125). In this application, Fleming alleged disability beginning on January 1, 2016. (*Id.*). Fleming's claim was initially denied on October 18, 2018. (Tr. 165). On November 9, 2018, Fleming requested a hearing that occurred on November 7, 2019. (Tr. 10). On January 2, 2020, the Administrative Law Judge ("ALJ") issued his decision and concluded that Fleming was not disabled. (Tr. 7–21). That same day, Fleming requested review of the unfavorable decision by the Appeals Council. (Tr. 1). The Appeals Council denied Fleming's request on September 11, 2020.

(Tr. 1-3). Fleming then appealed to this Court, where the parties' motions for summary judgment are now pending. (ECF Nos. 28, 32).

## II. Issues Presented

1. Whether the ALJ's conclusion that Fleming was capable of light work and therefore not disabled is supported by substantial evidence. (ECF No. 29 at 6; ECF No. 33 at 3).

2. Whether the Court is required to remand based on the subsequent approval of DIB. (ECF No. 29 at 8).

## III. Discussion

### a. Standard of Review

The Court's review is limited to a determination of whether the Commissioner's Decision is supported by substantial evidence, and whether the Commissioner applied the proper legal standards in evaluating the evidence. *See* 42 U.S.C. § 405(g); *Zirnsak v. Colvin*, 777 F.3d 607, 610 (3d Cir. 2014). "The Commissioner's findings of fact are binding if they are supported by substantial evidence." *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010). Substantial evidence "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consol. Edison Co. v. Nat'l Labor Rels. Bd.*, 305 U.S. 197, 229 (1938)). Substantial evidence "is 'more than a mere scintilla but may be somewhat less than a preponderance of the evidence.'" *Zirnsak*, 777 F.3d at 610 (quoting *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005)). The Court "review[s] the record as a whole to determine whether substantial evidence supports a factual finding." *Id.* (quoting *Schaudeck v. Comm'r*, 181 F.3d 429, 431 (3d Cir. 1999)). "Courts are not permitted to re-weigh the evidence or impose their own factual determinations." *Chandler v.*

*Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011). Finally, the Court "review[s] the ALJ's application of the law de novo." *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 91 (3d Cir. 2007).

  b. **Evaluation Process**

  The ALJ evaluates disability claims according to a sequential five-step process. 20 C.F.R. § 404.1520(a)(4). "First, the Commissioner considers whether the claimant is 'engaging in substantial gainful activity.'" *Zirnsak*, 777 F.3d at 611 (quoting 20 C.F.R. § 404.1520(a)(4)(i)). If the claimant is engaging in substantial gainful activity, then the claimant is not disabled. *Id.* "Second, the Commissioner considers the severity of the claimant's impairment(s)." *Id.* (quoting 20 C.F.R. § 404.1520(a)(4)(ii)). If at step two "the claimant's impairment(s) are either not severe or do not meet the duration requirement, the claimant is not disabled." *Id.* "Third, the Commissioner considers whether the claimant's impairment(s) meet or equal the requirements of one of the Commissioner's listed impairments." *Id.* (quoting 20 C.F.R. § 404.1520(a)(4)(iii)). If at step three "the claimant's impairment(s) meet [or exceed] the requirements of a listed impairment, then the claimant is disabled." *Id.*

  If the claimant's impairments do not meet or exceed a listed impairment "then the inquiry proceeds to the fourth step, where the Commissioner considers whether the claimant can return to her past work." *Id.* In determining whether the claimant can perform past relevant work, the claimant's residual functional capacity ("RFC") is assessed. *Id.* "A claimant's RFC measures 'the most [she] can do despite [her] limitations.'" *Id.* (quoting 20 C.F.R. § 404.1545(a)(1)) (alterations in original). In assessing the claimant's RFC, the "Commissioner examines 'all of the relevant medical and other evidence' to make its RFC determination." *Id.* (quoting 20 C.F.R. § 404.1545(a)(3)). If the claimant can perform past relevant work, then the claimant is found not

to be disabled. *Id.* The claimant bears the burden of satisfying the first four steps by a preponderance of the evidence. *Id.*

For claims filed on or after March 27, 2017, the regulations governing the types of opinions considered and the approach to evaluating opinions by ALJs were amended and the treating physician rule was eliminated. 20 C.F.R. §§ 404.1520c; 416.920c. Under the new, broadened regulations, the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources." *Id.* at § 404.1520c(a). Instead, the ALJ is required to articulate how persuasive s/he finds medical opinions and prior administrative findings. *Id.* at § 404.1520c(b). In doing so, the ALJ shall consider the following factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors such as familiarity with other evidence in a claim or new evidence received after the opinion that makes the findings more or less persuasive. *Id.* at § 404.1520c(c).

The most important factors considered are supportability and consistency. *Id.* at § 404.1520c(a); *see also id.* at § 404.1520c(b)(2). Therefore, the ALJ must explain how s/he considered the supportability and consistency of an opinion but is not required to discuss how s/he considered the remaining factors. *Id.* at § 404.1520c(b)(2). When opinions are equally supported and consistent with the record on the same issue but are not exactly the same, the ALJ must articulate how the other factors contributed to his or her decision. *Id.* at § 404.1520c(b)(3). Additionally, the ALJ is not required to disclose how s/he considered evidence from nonmedical sources. *Id.* at § 404.1520c(d).

At step five, "the Commissioner bears the burden of establishing the existence of other available work that the claimant is capable of performing." *Id.* at 612 (citing 20 C.F.R. § 404.1520(a)(4)(v); *Kangas v. Bowen*, 823 F.2d 775, 777 (3d Cir. 1987)). To meet this burden, "the Commissioner must produce evidence that establishes that 'work exists in significant numbers in the national economy that [the claimant] can do.'" *Id.* (quoting 20 C.F.R. § 404.1560). The Commissioner uses the RFC, as well as the testimony of vocational experts and specialists, to establish that work exists in significant numbers in the national economy that the claimant is capable of performing. *Id.* "[E]ntitlement to benefits is dependent upon finding the claimant is incapable of performing work in the national economy." *Id.* (internal quotation marks omitted).

c. **The ALJ's Evaluation of Fleming**

At step one, the ALJ found that Fleming had not engaged in substantial gainful activity since January 1, 2016—the alleged onset date. (Tr. 12). At step two, the ALJ found that Fleming had the following severe impairments: "degenerative joint disease of the knee; degenerative disc disease; headaches; status post myocardial infarction with stent; obesity; and carpal tunnel syndrome[.]" (*Id.*). At step three, the ALJ found that Fleming "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments within 20 CFR Part 404, Subpart P, Appendix 1[.]" (Tr. 14).

At step four, the ALJ determined that Fleming had the RFC to "perform light work as defined in 20 CFR 404.1567(b) except he requires the opportunity to alternate sitting and standing every 30 minutes. Can occasionally climb ramps and stairs, but never ladders, ropes, or scaffolds. Can occasionally balance and stoop, but never kneel, crouch, or crawl." (Tr. 14–15). The ALJ further determined that Fleming "[m]ust avoid concentrated exposure to extremes of light, noise,

heat, cold, vibration, wetness, humidity, environmental irritants such as fumes, dust, odors, gases, and areas of poor ventilation, and hazards such as dangerous moving machinery or unprotected heights. [And] can frequently handle, finger, and feel bilaterally." (Tr. 15).

Finally, at step five, the ALJ determined that, "[c]onsidering [Fleming's] age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that [he] can perform[.]" (Tr. 19). Accordingly, the ALJ found that Fleming had not been under a disability from January 1, 2016, through the date of the ALJ's decision. (Tr. 20).

   d. Analysis

      1. The ALJ's Decision, Including the Conclusion that Fleming Is Capable of a Limited Range of Light Work, Is Supported by Substantial Evidence

Fleming's general assertion is that the ALJ's decision was not supported by substantial evidence. (ECF No. 29 at 8). More specifically, Fleming takes aim at the ALJ's determination that he has the RFC to perform light work with additional limitations. (*Id.* at 8–9). He alleges that as a result of his medical history and the alternating sit/stand limitation imposed by the ALJ, he is only capable of sedentary work. *Id.* Thus, Fleming argues that the ALJ's finding of not disabled is contrary to Medical-Vocational Rule 201.14. *Id. at 10.*

      i. The ALJ's RFC Determination

As previously noted, the ALJ determined Fleming has the RFC to perform light work with additional limitations. (Tr. 14–15). Fleming takes particular issue with the ALJ's conclusion that he is capable of light work but "requires the opportunity to alternate sitting and standing every 30 minutes." (Tr. 14; ECF No. 29 at 8–9).

An RFC "is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." SSR 96-8, 1996 WL 374184, at *1 (July 2, 1996). A claimant's RFC may "be expressed in terms of the exertional levels of work[:] sedentary, light, medium, heavy, and very heavy." *Id.*

Section 404.1567 defines sedentary work as:

> Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 404.1567(a). Section 404.1567 defines light work as:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

With regard to the standing and sitting requirement for light work and sedentary work, the agency has explained that "[s]ince being on one's feet is required 'occasionally' at the sedentary level of exertion, periods of standing or walking should generally total no more than about 2 hours of an 8-hour workday, and sitting should generally total approximately 6 hours of an 8-hour workday" and "the full range of light work requires standing or walking, off and on,

for a total of approximately 6 hours of an 8-hour workday. Sitting may occur intermittently during the remaining time." SSR 83-10, 1983 WL 31251, at *5–6 (Jan. 1, 1983).

"The Medical-Vocational Guidelines provide tables which direct a finding of 'disabled' or 'not disabled' using a person's RFC, age, educational level, and previous work experience." *Ford v. Colvin*, 2015 WL 4608136, at *6 n.4 (D. De. July 31, 2015) (citing 20 C.F.R. § 404, Subpart P, app. 2)). As the ALJ explained, if Fleming "had the residual functional capacity to perform the full range of light work, a finding of 'not disabled' would be directed by Medical Vocational Rule 202.14." (Tr. 20). And, as Fleming notes, if he had the RFC to perform only sedentary work, Medical Vocational Rule 201.14 would direct a finding of "disabled." (ECF No. 29 at 10).

Here, however, the ALJ did not find Fleming capable of performing the full range of light work. (Tr. 20). Instead, he found that Fleming's "ability to perform all or substantially all of the requirements of [light] work has been impeded by additional limitations." (*Id.*)

Program Policy Statement SSR 83-12 addresses cases in which the RFC is between two exertional levels. When the RFC is determinative of whether an individual is found "not disabled" at a higher exertional level or found "disabled" at a lower exertional level, SSR 83-12 states:

> In situations where the rules would direct different conclusions, and the individual's exertional limitations are somewhere "in the middle" in terms of the regulatory criteria for exertional ranges of work, more difficult judgments are involved as to the sufficiency of the remaining occupational base to support a conclusion as to disability. Accordingly, VS assistance is advisable for these types of cases.

SSR 83-12, 1983 WL 31253, at *2–3 (Jan. 1, 1983) (defining "VS" as a vocational specialist, encompassing all vocational resource personnel). Further, regarding Fleming's standing and sitting restriction, SSR 83-12 states:

> There are some jobs in the national economy--typically professional and managerial ones--in which a person can sit or stand with a degree of choice. If an individual had such a job and is still capable of performing it, or is capable of transferring [sic] work skills to such jobs, he or she would not be found disabled. However, most jobs have ongoing work processes which demand that a worker be in a certain place or posture for at least a certain length of time to accomplish a certain task. Unskilled types of jobs are particularly structured so that a person cannot ordinarily sit or stand at will. In cases of unusual limitation of ability to sit or stand, a VS should be consulted to clarify the implications for the occupational base.

*Id.* at *4. It is clear that in situations where the exertional level is dependent on a finding of disabled or not disabled a vocational specialist ("VS"), including a vocational expert, is needed to opine on whether there are jobs in the national economy that the claimant is capable of performing to further inform the ALJ's decision.

Therefore, at Fleming's hearing, the ALJ called a vocation expert "[t]o determine the extent to which [the additional limitations] erode the unskilled light occupational base[.]" (Tr. 20). The ALJ asked the vocational expert whether jobs exist in the national economy that allow for light work with the additional limitations imposed on Fleming. (Tr. 158). At the disability hearing,

> [t]he vocational expert testified that given all of these factors the individual would be able to perform the requirements of representative occupations, all light exertional level and unskilled with SVP 2, such as marker (DOT No. 209.587-034; 10,000 jobs nationally, the number having been reduced to account the sit/stand limitation); a photocopy machine operator (DOT No. 207.685-014; 12,000 jobs nationally); and a cashier II (DOT No. 211.462-010; 80,000 jobs nationally, the number having been reduced to account for the sit/stand limitation)

(Tr. 20). The vocational expert testified that after accounting for the ALJ's limitations on light work for Fleming, there are 102,000 jobs in the national economy that he is capable of performing. (*Id.*)

>           ii.  Fleming's RFC Does Not Conflict With the Agency's Definition of Light Work

Fleming argues that "[w]hile the ALJ stated [he] had the RFC to perform light work, in reality the ALJ was describing the capability of someone limited to the sedentary level of exertion which would result in a finding of disabled pursuant to [R]ule 201.14[.]" (ECF No. 36 at 4). According to Fleming, the additional "4 hour stand-work limitation" imposed by the ALJ "contradict[s] the definition of light work." (*Id.* at 4–5).

The Court finds that the premise of Fleming's argument is flawed. As the Third Circuit explained in a similar case, an ALJ's conclusion that a claimant "possessed the RFC to perform light work with modifications, *i.e.*, that he not be required to stand or walk for more than two hours per day," is not inconsistent with the fact that "the full range of light work requires standing or walking for six hours per day." *Elliot v. Comm'r of Soc. Sec.*, 295 F. App'x 507, 508 (3d Cir. 2008) (rejecting the claimant's argument that the ALJ's modification was "a de facto restriction to part-time light work"); *see also Young v. Astrue*, 519 F. App'x 769, 771 (3d Cir. 2013) (upholding an ALJ's conclusion that, where a plaintiff is limited to no more than two hours of standing or walking, the plaintiff had the capacity to perform a limited range of light work).

Indeed, "[t]here is nothing oxymoronic in finding that a plaintiff can perform a *limited* range of light work. Such a finding is appropriate where . . . the evidence shows that the plaintiff can perform some, though not all, of the exertional requirements of a particular range." *Santiago*

*v. Barnhart*, 367 F. Supp. 2d. 728, 733 (E.D. Pa. Apr. 12, 2005) (citing *Boone v. Barnhart*, 353 F. 3d 203, 210 (3d Cir. 2003)).

In short, while it is true that Fleming is not able to perform the full range of light work, that is not the conclusion the ALJ reached. Instead, after reviewing the medical opinions and administrative medical findings, the ALJ found "[t]he opinion of the State agency medical consultant that the claimant can perform a reduced range of light work is persuasive as it is consistent with and supported by the overall record[.]" (Tr. 18). And the ALJ "added a [four hour] sit/stand option based on the claimant's testimony[.]" (*Id.*). The Court is therefore satisfied that the ALJ's RFC determination was not flawed simply because he added additional limitations to the *full* range of light work contemplated in SSR 83-10. *See Lackey v. Colvin*, No. 12-516, 2013 WL 1903662, at *8–9 (W.D. Pa. May 7, 2013) (rejecting the claimant's argument that the ALJ's RFC finding that she was "limited to standing and/or walking 'four hours out of an eight-hour day' precludes her from performing light work as defined in SSR 83-10").

Moreover, in his reply brief, Fleming asserts that because "the ALJ did not further discuss claimant's lifting and carrying ability," he implicitly found that Fleming "could perform the lifting and carrying required by the full range of light work." (ECF No. 36 at 4). Section 404.1567 states that light work "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567(b). "'Frequent' means occurring from one-third to two-thirds of the time." 20 C.F.R. § 416.967(b). According to Fleming, "[a] limitation on standing and walking for 4 hours out of an 8 hour day conflicts with being able to frequently lift at a light level." (*Id.*). In sum, Fleming argues that there is an inherent

contradiction between his RFC permitting him to lift between approximately two and five hours a day and the additional limitation on standing for no more than four hours a day.

In support of this argument, Fleming cites to *Ford v. Colvin* and *Campbell v. Astrue.* No. 1:14-CV-1046, 2015 WL 4608136 (D. De. July 31, 2015); No. 09-5356, 2010 WL 4689521 (E.D. Pa. Oct. 29, 2010). But both *Ford* and *Campbell* can be distinguished from Fleming's case. Importantly, *Ford* and *Campbell* involved an ALJ finding that the claimant is capable of light work with a *two-hour* standing limitation with the ability to lift no more than twenty pounds occasionally and ten pounds frequently. *See Campbell*, 2010 WL 4689521 at *3; *Ford*, 2015 WL 4608136 at *3. As the *Campbell* court explained:

> In order for someone to be able to "lift or carry" objects of a particular weight on a "frequent" basis, however, that individual would need to be able to walk and stand for a much larger portion of the day than the "no more than one to two hours in an eight hour work day" of which the ALJ found Campbell to be capable. . . . There is thus an inherent contradiction between the ALJ's finding that Campbell could 'frequently' lift or carry 10 lbs.—which, pursuant to SSR 83-10, would require Campbell to be on his feet for approximately 3 to 6 hours of an 8-hour workday—and his finding that Campbell had the capacity to perform work requiring "standing or walking for no more than one to two hours in an eight hour work day."

*Campbell*, 2010 WL 4689521 at *17–18. And the *Ford* court relied on *Campbell* in reaching the same conclusion. *Ford*, 2015 WL 4608136 at *24–25.

But the "inherent contradiction" presented by a two-hour standing limitation that carried the day in *Ford* and *Campbell* is not present in Fleming's case. While the ALJ did not impose any lifting or carrying restrictions on Fleming, he added a four-hour standing restriction and considered the orthopedic examiner opinion (submitted by Fleming) that

noted Fleming could continuously[1] lift and carry up to twenty pounds to conclude he was capable of a limited range of light work requiring frequent lifting and carrying. (Tr. 998).

Put differently, the ALJ found that Fleming was limited to standing for four hours a day and was able to lift or carry for approximately three to six hours a day. Therefore, unlike in *Ford* and *Campbell*, Fleming's four-hour standing limitation can be harmonized with the ability to frequently lift or carry. There is no "inherent contradiction" because, even with the ALJ's four-hour standing limitation, Fleming is able to carry or lift for more than one-third of the day. Indeed, he may stand, and in turn carry and/or lift, for up to one half of the day. For this reason, and because Fleming has not provided the Court with any authority finding that a four-hour standing limitation inherently conflicts with the ability to frequently lift or carry, the Court rejects Fleming's argument on this point. Accordingly, the Court is satisfied that the ALJ's standing limitation does not conflict with Fleming's ability to frequently lift and carry.

Next, Fleming argues that "[t]he vocational expert's testimony cannot be relied upon because it is inconsistent with the agency's definition of the exertional requirements of work."[2] (ECF No. 36 at 4). Fleming cites SSR 00-4P in support of his argument, which provides in relevant part:

---

[1] While "frequently" means from one-third to two-thirds of the time, "continuously" means more than two-thirds of the time. (Tr. 998).
[2] The Court notes that Fleming provides little context regarding this argument save his citation to SSR 00-4P. (ECF No. 36 at 4). While the Court interprets Fleming's argument to be that the vocational expert's testimony was inconsistent with the exertion requirements of work in the national economy as set forth in the Dictionary of Occupations Titles ("DOT"), the Court acknowledges that Fleming may be arguing that the testimony was "based on underlying assumptions or definitions that are inconsistent with [the Agency's] regulatory policies or definitions." SSR 00-4P, 2000 WL 1898704, at *6. However, the vocational expert's testimony in this case was based on the ALJ's hypothetical question that included Fleming's RFC

> Occupational evidence provided by a VE or VS generally should be consistent with the occupational information by the DOT. When there is an apparent unresolved conflict between VE or VS evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE or VS evidence to support a determination or decision about whether the claimant is disabled. At the hearings level, as part of the adjudicator's duty to fully develop the record, the adjudicator will inquire, on the record, as to whether or not there is such consistency.

SSR 00-4P, 2000 WL 1898704, at *4–5. And the Third Circuit similarly requires an ALJ to address any "conflict between the VE's testimony and the DOT[.]" *Boone v. Barnhart*, 353 F.3d 203, 209 (3d Cir. 2003).

Here, however, the Court finds that there was no inconsistency or conflict between the vocational expert's testimony and the DOT. Notably, the ALJ's hypothetical question to the vocational expert specifically noted Fleming's "residual functional capacity to perform light work," but with "other limits"—which the ALJ outlined in detail. (Tr. 158). Therefore, the vocational expert "had this information in hand" when he testified that there are jobs in the national economy that Fleming can perform. *Tudi v. Colvin*, No. 13-1423, 2014 WL 2860642, at *13 (W.D. Pa. June 23, 2014) (finding no conflict between a vocational expert's testimony and the DOT where the hypothetical question posed by the ALJ explicitly detailed the claimant's limitations).

Moreover, the ALJ asked the vocational expert at the hearing whether "the opinions and testimony [he] provided [were] consistent with the DOT[,]" and the vocational expert answered affirmatively. (Tr. 159–60). The ALJ was therefore entitled to rely on the vocational expert's testimony. *See, e.g., Green v. Astrue*, No. 10-468, 2010 WL 4929082, at *17–18 (W.D. Pa.

---

of light work with additional limitations. As the Court has already explained, that RFC was not inconsistent with the Agency's definition of light work. Thus, the vocational expert's testimony was not based on any inconsistent or faulty definitions.

Nov. 30, 2010) (citing *Gibbons v. Barnhart*, 85 F. App'x 88 (10th Cir. 2003) (finding that "the ALJ was entitled to rely upon the VE's testimony" where the "VE stated that his testimony was consistent with the DOT"); *Tudi*, 2014 WL 2860642 at *13–14. Accordingly, the Court finds that the vocational expert's testimony was properly based on Fleming's RFC of light work with additional limitations and provided substantial evidence of a significant number of jobs in the economy that Fleming can perform.

In sum, as SSR 83-12 states, a vocational expert should advise in cases where the RFC falls between two levels that direct different findings of disability. Thus, because (1) the ALJ found Fleming's own medical evidence persuasive, (2) the ALJ relied on a vocational expert for further assistance in determining jobs available to Fleming, (3) the vocational expert testified that 102,000 jobs exist in the national economy that Fleming is able to perform (including the restrictions imposed by the ALJ), and (4) the restrictions imposed do not conflict with the Agency's definition of light work and the ability to lift and carry, the Court finds that there is substantial evidence to support the ALJ's finding that Fleming is not disabled. *See Ambrose v. Colvin*, No. 3:14-cv-1618, 2015 WL 877790, at *15 (M.D. Pa. March 2, 2015) (holding that because the ALJ included all of the RFC limitations on light work in his hypothetical and the vocational expert testified that significant jobs existed in the economy that accounted for the limited range of light work, the ALJ's decision was supported by substantial evidence); *Acker v. Colvin*, No. 3:15-cv-1319, 2016 WL 6826165, at *32–33 (M.D. Pa. Nov. 18, 2016).

### 2. The Sentence Six Remand

In the parties' respective Motion(s) for Summary Judgment, both indicate that Fleming had multiple claims for DIB. (ECF No. 28 at 8; ECF No. 33 at 3 n.2). Fleming notes that his second

claim for DIB was approved on January 3, 2020, the day after the ALJ's decision. (ECF No. 29 at 8). While neither party briefs this issue at length, it is worthy of the Court's attention.

"To obtain a sentence six remand, the plaintiff has the burden of proving that evidence not submitted to the ALJ is new and material, and he had good cause for not presenting the evidence to the ALJ." *Blum v. Berryhill*, No. 3:16-CV-2281, 2017 WL 2463170, at *12 (M.D. Pa. June 7, 2017) (citing 42 U.S.C. § 405(g) (sentence six) (also citing *Matthews v. Apfel*, 239 F.3d 589, 593 (3d Cir. 2001))).

The Third Circuit has held that:

> [T]he fact that another ALJ found [the plaintiff] to be disabled does not, in itself, warrant remand or reversal. *See Allen v. Comm'r of Soc. Sec.*, 561 F.3d 646, 652-53 (6th Cir. 2009). Remand or reversal based on the subsequent favorable decision would be appropriate only if that decision was based on new and material evidence that [the plaintiff] had good cause for not raising in the prior proceeding. *Id.* at 653.

*Cunningham v. Comm'r of Soc. Sec.*, 507 F. App'x. 111, 120 (3d Cir. 2012) (denying remand because plaintiff did not present any new and material evidence). In the instant case, Fleming "cites no contrary authority and does not point to any new and material evidence upon which the subsequent decision was based." *Blum*, 2017 WL 2463170 at *12. Because Fleming's only evidence of new and material evidence is the subsequent finding that Fleming is disabled, Fleming is not eligible for a sentence six remand.

IV.    **Conclusion**

Based on the foregoing, the Court finds that the Commissioner's decision should be affirmed. An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JEFFREY FLEMING,** | ) | Case No. 3:20-cv-234 |
| | ) | |
| Plaintiff, | ) | **JUDGE KIM R. GIBSON** |
| | ) | |
| v. | ) | |
| | ) | |
| **KILOLO KIJAKAZI,** | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

AND NOW, this 2nd day of November, 2023, upon consideration of Plaintiff's Motion for Summary Judgment (ECF No. 28) and Defendant's Motion for Summary Judgment (ECF No. 32), and for the reasons set forth in the accompanying Memorandum Opinion, **IT IS HEREBY ORDERED** that Plaintiff's motion for summary judgment (ECF No. 28) is **DENIED. IT IS FURTHER ORDERED** that Defendant's motion for summary judgment (ECF No. 32) is **GRANTED.**

BY THE COURT:

_____
**KIM R. GIBSON**
**UNITED STATES DISTRICT JUDGE**